# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JESSE R. PEREZ (R-44289), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 14-cv-4286 |
| R. PARKER, et al., | ) Judge Robert M. Dow. Jr. |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jesse R. Perez, a prisoner at Menard Correctional Center, brought this *pro se* civil rights action. The Court recruited counsel to assist Plaintiff with this litigation. Counsel filed an amended complaint alleging the use of excessive force by correctional staff while Plaintiff was detained at the Will County Adult Detention Center, inadequate medical care for the resulting injuries, and a civil conspiracy by correctional staff to have Plaintiff physically assaulted by other detainees. Defendants moved for summary judgment on the issue of whether Plaintiff exhausted his administrative remedies. After finding that an issue of fact existed as to whether Plaintiff exhausted his administrative remedies, the Court held a *Pavey* hearing. Plaintiff was represented by counsel at the hearing. For the reasons explained below, Defendants' motion to bar hearsay testimony [138] is denied. However, Defendants have demonstrated that Plaintiff failed to exhaust his administrative remedies as to the claims in the present lawsuit; therefore, this case is dismissed without prejudice. Civil case terminated.

**I.      Legal Standard**

Under 42 U.S.C. § 1997e(a): "No action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." To exhaust administrative remedies, the inmate must grieve his complaint through "'all steps that the agency holds out,'" and he must "'do[] so properly (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). An inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024. Administrative remedies, however, must be "available," and "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Whether a claim has been exhausted pursuant to § 1997e(a) is a determination for a judge—not a jury—to make. *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008). If a *Pavey* hearing is held due to an issue of fact existing as to whether a prisoner exhausted his administrative remedies, the court hears evidence, find facts, and determines credibility. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The burden of proof is on the defendant to demonstrate that the prisoner failed to exhaust available administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

## II. Defendants' Motion to Bar Hearsay Testimony

Prior to the *Pavey* hearing, Defendants moved to bar Plaintiff from testifying as to the contents of written health service requests and grievances that he alleges he submitted but which were no longer in existence through no fault of his own. Defendants argue that the testimony is hearsay and violates the best evidence rule.

2

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Here, Plaintiff was not testifying about the contents of any health service requests or grievances for the truth of the matter asserted in the document. Rather, he was testifying as to their existence, including what he did with them and what others allegedly did or did not do with them. Accordingly, the testimony was not hearsay. See *Goings III v. Potter*, 2018 WL 1696654, at *3 (N.D. Ind. Apr. 6, 2018) (plaintiff's testimony as to officer's statement that plaintiff's issue could not be grieved was not hearsay because it was offered to show that officer misrepresented the availability of the grievance process, not to prove that the officer's statement was true); *Venus v. Goodman*, 556 F. Supp. 514, 518 (W.D. Wis. 1983) (statements by plaintiff regarding his unsuccessful attempts to get medical assistance were not hearsay because they were offered only to prove that he made the statements, not to prove the truth of the matter asserted in the statements).

Defendants' argument that Plaintiff's testimony violates the best-evidence rule also is unavailing. "An original writing … is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. However, "an event may be proved by nondocumentary evidence, even though a written record of it was made. If, however, the event is sought to be proved by the written record, the rule applies." Fed. R. Evid. 1002 Advisory Committee Notes. Here, Plaintiff testified as to the existence of the health service requests and grievances—he did not testify without the documents in order to prove something within the documents. Accordingly, his testimony did not violate the best evidence rule. *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648–49 (7th Cir. 2006) ("If a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document,

however, then Rule 1002 does not apply."). Thus, Defendants' motion to bar hearsay testimony [138] is denied.

### III. Facts

Plaintiff, Jesse R. Perez, brought this *pro se* civil rights action [1] pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on July 9, 2012, while a detainee at the Will County Adult Detention Facility ("WCADF"), he was attacked by two other detainees. Following the attack, correctional officers used excessive force on Plaintiff and he was denied proper medical care for his resulting injuries. The Court recruited counsel to assist Plaintiff with this litigation. Counsel filed an amended complaint [19] alleging the use of excessive force by correctional staff while Plaintiff was detained at the WCADF, inadequate medical care for the resulting injuries, and a civil conspiracy by correctional staff to have Plaintiff physically assaulted by other detainees. Defendants filed their affirmative defenses [see 44, 49] alleging that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). After discovery, Defendants moved for summary judgment [see 95] on the issue of whether Plaintiff exhausted his administrative remedies. The Court issued an opinion [116] explaining that a factual dispute existed as to whether Plaintiff exhausted his administrative remedies, which required a *Pavey* hearing to resolve.

The *Pavey* hearing was held on June 15, 2018. [See 158, 163.] Plaintiff was represented by counsel at the hearing. Four witnesses testified: Lt. Doreice Burse and Sgt. Michelle Moffett from the Will County Sheriff's Office, Jennifer Briscoe from Correct Care Solutions ("CCS"), and Plaintiff.

On the basis of the evidence introduced at the hearing [see 158, 163 (transcripts)], the Court determines the following facts: The WCADC has a formalized grievance process. (Doc. 163, pg. 27.) The WCADF provides inmates with a triplicate form called a "Form-22" which consists of a pink page and a white and yellow page. (*Id*., pg. 29.) A detainee may obtain the Form-22 during the time he is outside of his cell. (*Id*., pg. 27.) The detainee fills out the Form-22 and gives it to an officer or places it in a designated bin. (*Id*., pg. 28.) The officer reviews the Form-22 and decides whether he or she can address the issue. (*Id*.) The officer signs the Form-22 and gives the detainee the pink copy of the form. (*Id*.) The remaining white and yellow copy is placed in the classification mailbox. (*Id*.). The classification specialist retrieves the Form-22s and disperses them to the appropriate departments. (*Id*.)

All grievances go to the classification sergeant who reviews the grievances. (Doc. 163, pg. 28.) The classification sergeant also assigns the grievance a number and logs the grievance into the grievance log. (*Id*.) The grievance is then sent to the proper department to address the specific issue. (*Id*., pg. 33.) The department head then reviews and answers the grievance. (*Id*.) The grievance is placed in the housing unit's mailbox and the white copy is placed in the classification mailbox. (*Id*.) The classification sergeant logs the response and files the white copy in the detainee's classification file. (*Id*.) A copy of the response to given to the detainee, who may the appeal the response. (*Id*., 69.)

If a detainee were to complete a Form-22 addressing an issue that is not subject to the grievance process, the correctional officer would give back the Form-22 to the detainee with an explanation that it is not a grievable issue. (Doc. 163, pg. 53.) The white copy of the Form-22 still would be forwarded to the classification sergeant and placed in the detainee's classification folder.

(*Id.*, 55.) However, this Form-22 would not be logged on the grievance log because it is not a valid grievance. (*Id.*)

Detainees at WCADF may request medical care by completing a health service request. (Doc. 163, pg. 94.) The completed health service request is placed in a locked sick call box. (*Id.*, 95.) Nursing staff retrieve the health service request forms on a daily basis. (*Id.*) The nurse reviews the health service request and determines if it needs attention or triage, based on the urgency of the request. (*Id.*, pg. 95-96.) The nurse provides a written response on the bottom of the health service request form. (*Id.*, pg. 96.)

On July 9, 2012, Plaintiff was involved in a fight with two other detainees. (Doc. 163, pg. 42.) Following the fight and the alleged use of excessive force by correctional staff, Plaintiff received medical treatment for his injuries on July 9, 10, 20 and 24, 2012. (*Id.*, pgs. 100-101.) Plaintiff was transferred to the custody of the Illinois Department of Corrections on October 11, 2012. (*Id.*, pgs. 52-53.) Plaintiff was aware of how the grievance procedure worked at WCADF. (Doc. 158, pg. 38.)

Plaintiff testified that between July 9, 2012 and October 11, 2012, he submitted four or five grievances about being assaulted on July 9, 2012. (Doc. 158, pg. 53.) The first grievance he submitted about the July 9 incident was on July 10, 2012. (*Id.*, pg. 34.) That grievance included a discussion of the alleged use of excessive force by the correctional staff and not getting proper medical care for his injuries. (*Id.*, pg. 38.) Plaintiff continued submitting grievances because he never received a response to those that he had submitted. (*Id.*, pg. 36.) Plaintiff testified that he submitted four or five grievances about the assault by correctional staff, three grievances about the lack of medical care, and one grievance that addressed both the assault and the lack of proper

6

medical care. (*Id.*, pg. 53.) Plaintiff testified that he did not receive the pink copies back when he submitted these grievances. (*Id.*, pg. 54.) Plaintiff submitted eleven other grievances not related to the July 9 incident from July 9, 2012 and October 11, 2012. (*Id.*) Plaintiff did receive a response as to the eleven other grievances. (*Id.*, pg. 69.)

Plaintiff agreed that at his deposition he testified to having submitted seven to ten grievances between July 9, 2012 and October 11, 2012, regarding the alleged use of excessive force. (Doc. 158, pg. 84.) Plaintiff also agreed that at his deposition he testified that he may have submitted ten grievances regarding the lack of proper medical care but ten seemed like a low number because he submitted so many. (*Id.*, pg. 85.) Plaintiff further agreed that at his deposition he testified that he kept the pink copies of the grievances he submitted related to the alleged excessive force in his property bin at the WCADF. (*Id.*, pg. 103.) He testified at his deposition that he did not have the pink copies of the grievances he submitted because he was not able to bring them with when he was transferred to IDOC custody. (*Id.*, pgs., 88-89, 104.)

Classification Lt. Burse reviewed the grievance log for the time period beginning July 9, 2012 and ending October 11, 2012. (Doc. 163, pg. 38.) The log did not include any grievance by Plaintiff about excessive force by correctional staff or not receiving medical care after the July 9 incident. (*Id.*) The grievance log for this time period did include grievances submitted by Plaintiff for other issues not related to the July 9 incident. (*Id.*, pgs. 38-40.)

Classification Sgt. Moffett reviewed Plaintiff's classification file. (Doc. 158, pgs. 4-5.) Plaintiff's classification file contained a total of 278 inmate request forms for his entire detention at the WCADC. (*Id.*, pgs. 5, 27.) Plaintiff's file did not include any grievances pertaining to the July 9 incident. (*Id.*, pg. 6.)

Plaintiff submitted a health service request form on July 29, 2012, regarding a blood draw on July 24. (Doc. 163, pg. 101.) The health service request did not mention any problems or complaints about medical care Plaintiff had received up to that date relating to the July 9 incident. (*Id.*). Plaintiff submitted an additional health service request after the July 9 incident about a rash on his elbow. (*Id.*, pg. 102.) According to his testimony, Plaintiff submitted seven to ten health service requests for medical treatment of his resultant injuries after July 9, 2012. (Doc. 158, pg. 70.) Plaintiff's file does not include these seven to ten health service requests. (Doc. 163, pgs. 101-102.)

IV. Analysis

Defendants have demonstrated that the WCADF had a formalized grievance procedure while Plaintiff was detained at the facility. The grievance procedure required Plaintiff to complete a Form-22 regarding the issue he was grieving and turn in the Form-22 to either an officer or a designated bin. The Form-22 would then be reviewed by a classification sergeant. The detainee would be provided the pink copy of the Form-22 for both those submissions that are considered grievable and those that are not. The white copy of the Form-22 for both grieveable issues and nongrievable issues would be filed in the detainee's classification folder.

Defendants also demonstrated that the grievance procedure was available to Plaintiff and that he frequently submitted grievances about issues he had at the WCADF. Defendants further demonstrated that Plaintiff knew how to request medical care by submitting a health service request. Defendants demonstrated that there are no records of Plaintiff submitting a grievance or a health service request regarding the July 9 incident.

Plaintiff's testimony that he submitted several grievances and health service requests regarding the July 9 incident was not credible. First, Plaintiff was unable to explain how or why only the grievances and health service request forms related to the July 9 incident were not in his classification file and not included on the grievance log. This included grievances and health service request forms that Plaintiff submitted for other issues both before and after the July 9 incident. In addition, Plaintiff's testimony about how many grievances he submitted relating to the July 9 incident changed after his deposition. At his deposition, Plaintiff testified he submitted well over ten grievances relating the July 9 incident. At the *Pavey* hearing, Plaintiff testified that he submitted, at most, ten total grievances relating to the July 9 incident. In addition, at his deposition, Plaintiff testified that he did not have the pink copies of the grievances he submitted because they were destroyed when he was transferred to IDOC. At the *Pavey* hearing, Plaintiff testified he never received any pink copies back after he submitted the grievance. These inconsistencies evidence a lack of credibility as to Plaintiff's testimony regarding whether he submitted grievances relating to the July 9 incident.

Accordingly, the Court finds that Plaintiff failed to exhaust the administrative remedies that were available to him relating to the July 9 incident and the case is dismissed without prejudice for failure to exhaust administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.").

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. See Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. See *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff

could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. See Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. See Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. See Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. See Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. See Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. See Fed. R. App. P. 4(a)(4)(A)(vi).

## V. Conclusion

For the reasons stated in this opinion, Defendants' motion to bar hearsay testimony [138] is denied. However, the case is dismissed without prejudice for failure to exhaust administrative remedies.

Dated: March 19, 2019

                                                                  _____
Robert M. Dow, Jr.
United States District Judge